HAYNES AND BOONE, LLP
Kenneth G. Parker / Bar No. 182911
kenneth.parker@haynesboone.com
Diana C. Obradovich / Bar No. 312633
diana.obradovich@haynesboone.com
600 Anton Boulevard, Suite 700
Costa Mesa, California 92626
Telephone:   (949) 202-3000
Facsimile    (949) 202-3001

Attorneys for Plaintiff
NINTENDO OF AMERICA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>MIKEL EUSKALDUNAK and DOES 1-100,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) DMCA VIOLATION**<br>**(2) COPYRIGHT INFRINGEMENT (NINTENDO GAMES)**<br>**(3) INDUCEMENT TO INFRINGE COPYRIGHT**<br>**(4) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(5) TRADEMARK COUNTERFEITING & INFRINGEMENT**<br>**(6) FALSE DESIGNATION OF ORIGIN, FALSE DESCRIPTIONS**<br>**(7) FEDERAL TRADEMARK DILUTION**<br>**(8) COMMON LAW TRADEMARK INFRINGEMENT**<br>**(9) STATUTORY TRADEMARK INFRINGEMENT**<br>**(10) CALIFORNIA TRADEMARK DILUTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Nintendo of America Inc. ("NOA" or "Plaintiff") hereby brings this action against Defendant Mikel Euskaldunak ("Euskaldunak") and Does 1-100 (collectively with Euskaldunak, "Defendants") and alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.     This is a complaint for injunctive relief and damages based on Defendants' circumvention of digital rights protection in NOA's video game consoles and distribution of circumvention devices in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*; copyright infringement, inducement to infringe copyright, and contributory copyright infringement arising under the Copyright Act, 17 U.S.C. § 501, *et seq.* (Copyright Act); trademark counterfeiting, infringement, and dilution in violation of 15 U.S.C. § 1114; as well as related state law claims for trademark infringement and dilution.

2.     Nintendo and its authorized licensees have created and published many popular video games for play on Nintendo video game systems (collectively, software games created by Nintendo and its authorized licensees for the Nintendo game systems are referred to herein as "Nintendo Console Games").

3.     NOA is responsible for the marketing and sale of Nintendo products in the Western Hemisphere.

4.     NOA is the legal owner of numerous copyright registrations, each of which were duly and legally issued by the U.S. Copyright Office, including, without limitation, those listed at Exhibit A.

5.     NOA is the legal owner of hundreds of trademark registrations in the U.S. Patent and Trademark Office including, without limitation, those listed at Exhibit C (collectively, the "Nintendo Trademarks").

6.     Among NOA's newest video game consoles is the Nintendo Switch. Nintendo Switch users can purchase games either digitally from the official

1

Nintendo Switch Online shop (formerly Nintendo eShop) or in physical copies on cartridges specifically manufactured for use with the Nintendo Switch console.

7.     NOA also sells the NES Classic Edition console in the United Sates. The NES Classic Edition was designed to look like a smaller version of the original Nintendo Entertainment System ("NES") console.  The NES Classic Edition comes pre-loaded with thirty Nintendo Console Games.

8.     Copyright law prohibits both the copying of Nintendo Console Games and the modification of the Nintendo Switch and NES Classic Edition consoles to play unauthorized copies of Nintendo Console Games.  Trademark law prohibits, *inter alia*, the use of the Nintendo Trademarks in connection with the sale of Nintendo Switch and NES Classic Edition consoles that have been modified to allow users to play illegally copied games.

9.     Individuals have developed the means to modify Nintendo consoles illegally to circumvent hardware and software limitations that restrict Nintendo video game consoles to only play authorized games.  These illegal modifications allow users to play unauthorized copies of Nintendo Console Games on these consoles, which are often infringing (free) copies of Nintendo Console Games the user has not purchased.

10.     Upon information and belief, Euskaldunak maintains a profile on the website OfferUp, which is an online platform for users to buy and sell goods and services.  Through OfferUp, Defendants have sold and continue to sell modification services for the Nintendo Switch game console that allow the user "to play ANY switch games [they] want."  Upon information and belief, Defendants install a software modification on the Nintendo Switch that allows customers to play games coped from unauthorized sources and loaded on a memory card, which circumvents the Nintendo Switch's copyright protections.  Defendants provide customers with "free" (*i.e.*, illegally copied) game(s) with every purchase of illegal modification services for Nintendo Switch consoles.

11.     In addition, Defendants offer NES Classic Edition video game systems for sale via the OfferUp website; however, instead of the thirty authorized Nintendo Console Games that come pre-loaded on the game system, Defendants modify the game systems so they are pre-loaded with unauthorized copies of over 800 different games.  Defendants do not have a license to distribute any of those additional games.  Defendants sell these modified NES Classic Edition game systems for $15.00 above retail price.

12.     NOA brings this action to remedy Defendants' violations of the DMCA, copyright infringement, trademark infringement, trademark counterfeiting and dilution.  NOA seeks injunctive relief and monetary damages as set forth below.

## THE PARTIES

13.     NOA is a corporation organized and existing under the laws of Washington, with its headquarters located in Redmond, Washington.  NOA is a wholly owned subsidiary of Nintendo Co. Ltd. ("NCL"), a Japanese company headquartered in Kyoto, Japan (collectively, NOA and NCL are referred to herein as "Nintendo").  NOA is responsible for the marketing and sale of Nintendo products in the Western Hemisphere.  NCL develops and manufactures, and NOA markets and distributes, electronic video game systems, video games, and accessories.

14.     Upon information and belief, Euskaldunak is an individual residing at 6141 Orange Avenue, Cypress, California 90630 in apartment number 5 on the first floor of the building.

15.     NOA is unaware of the true names and capacities of defendants sued herein as DOES 1-100, inclusive, and therefore sues these defendants by such fictitious names.  NOA will amend the Complaint to allege their true names and capacities when ascertained.  NOA is informed and believes, and thereon alleges, that each of the fictitiously named defendants is responsible in some manner for

the occurrences herein alleged, and that NOA's injuries herein alleged were proximately caused by their conduct.

16.     NOA is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants was the agent of each of the remaining defendants, and in doing the things thereinafter alleged, was acting within the course and scope of such agency.

17.     NOA is informed and believes, and thereon alleges, that each of the Defendants, willingly and willfully conspired and agreed among themselves to perform the wrongful acts and schemes set forth in this Complaint.

## JURISDICTION AND VENUE

18.     This is a civil action seeking damages, injunctive relief, and other equitable relief, under the Copyright Act, 17 U.S.C. § 101 *et seq.*; the DMCA, 17 U.S.C. § 1201; the Lanham Act of 1946, as amended, 15 U.S.C. §§ 114, 116, and 1125; and the laws of the State of California.

19.     This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over NOA's state law claims because those state law claims are so related to NOA's claims under the Copyright Act, DMCA, and Lanham Act that they form part of the same case or controversy. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, and the action is between a Washington corporation and a California citizen.

20.     This Court has personal jurisdiction over Defendants because Defendants reside or do business in this District.  In addition, Defendants have purposefully directed their tortious activities at this district by selling the unlawfully modified video game systems in this district.

21.     Venue is proper in this district and division under 28 U.S.C. §§ 1391(b) and 1400(a) at least because Defendants reside and may be found in the

1    Central District of California, and because this is the jurisdictional district in which

2    a substantial part of the events giving rise to the claims occurred.

3                    **FACTS APPLICABLE TO ALL CLAIMS**

4            **Nintendo's Intellectual Property and Efforts to Prevent Piracy**

5           22.    Nintendo is a world-famous brand and Nintendo video game systems

6    (such as Nintendo Switch, Nintendo 3DS, Nintendo Entertainment System

7    ("NES"), Super Nintendo Entertainment System ("SNES") and Wii) and Nintendo

8    games (such as Super Mario Bros., Mario Kart, Pokémon, Donkey Kong, and The

9    Legend of Zelda), along with iconic characters (such as Mario, Link, Pikachu and

10   Donkey Kong) are well-known and loved among consumers in the United States

11   and abroad.  The popularity of Nintendo's video game systems, games, and

12   characters is the result of substantial creative and financial investment in product

13   development, game development, intellectual property, and marketing.  Nintendo

14   has received many awards for its pioneering contributions to the video game

15   industry and is an acknowledged leader in the field.  Nintendo has earned

16   tremendous consumer awareness and goodwill through its commitment to

17   developing innovative, fun, and exciting video game systems and video games.

18   Nintendo video game systems and video games are enjoyed by tens of millions of

19   consumers in the United States and abroad.

20          23.    Nintendo's innovation is the product of its substantial investment in

21   branding, intellectual property protection, and product development.  Nintendo and

22   its authorized licensees have created and published many popular video games

23   specifically and exclusively for play on Nintendo video game systems (Nintendo

24   Console Games).

25          24.    NOA holds copyright rights in various Nintendo Console Games and

26   Nintendo video game systems, including, without limitation, those listed at Exhibit

27   A.  True and correct copies of a representative sample of those copyright

28   registrations are attached as Exhibit B.

25.     NOA also owns hundreds of federal trademark registrations in the U.S. Patent and Trademark Office (the Nintendo Trademarks), including, without limitation, those listed in Exhibit C, many of which have become incontestable pursuant to 15 U.S.C. § 1065.  True and correct copies of the trademark registrations are attached hereto as Exhibit D.

26.     Nintendo expended substantial time, money, and effort in developing consumer recognition and awareness of its marks.  Through the extensive use of the Nintendo Trademarks, Nintendo has built up and developed significant good will in its entire product line.  Nintendo has gone to great lengths to protect its name and enforce the Nintendo Trademarks.

27.     NOA has used the Nintendo Trademarks for many years on and in connection with Nintendo video game systems, Nintendo Console Games, and related products.  Based upon NOA's extensive advertising, sales and wide popularity of Nintendo's products, the Nintendo Trademarks have acquired secondary meaning so that any product and advertisement bearing such marks is immediately associated by consumers, the public, and the trade as being a Nintendo product.

28.     The Nintendo Switch (*see* fig. l and fig. 2) is a video game system that can be used at home as well as on-the-go.   When used as a home console, the main unit is inserted into a docking station to connect to a television.  The Nintendo Switch can be removed from the dock and used like a tablet computer through its LCD touchscreen.  The Nintendo Switch design is aimed at a wide demographic of video game players through the multiple modes of use.  The Nintendo Switch was released in the United States and worldwide on March 3, 2017.

**COMPLAINT FOR DMCA VIOLATIONS, COPYRIGHT INFRINGEMENT,
AND TRADEMARK INFRINGEMENT**

1
2
3
4
5
6
7
8



(*fig. 1*)                                          (*fig. 2*)

9    29.    In its first 10 months on the market, NOA sold approximately 4.8

10  million Nintendo Switch consoles in the U.S., making it the fastest-selling home

11  console in the U.S. at that time.

12  30.    A user plays a video game on the Nintendo Switch by inserting an

13  authorized game cartridge (referred to herein as "Nintendo Switch Game Card")

14  into the Nintendo Switch for game play.  A user can also purchase Nintendo

15  Console Games digitally from the official Nintendo Switch Online shop.  NOA

16  does not authorize and has never authorized the copying or downloading of

17  Nintendo Console Games onto devices that can be used to bypass the security

18  measures that protect the Nintendo Switch.  NOA does not authorize and has never

19  authorized Nintendo Console Games to be copied onto personal computers or to be

20  downloaded from personal computers to such devices.

21  31.    The NES Classic Edition video game system launched in November

22  2016 in North America, Europe, Australia, and Japan.  Aesthetically, the console

23  looks like a smaller replica of the original NES that was released in the 1980s.  The

24  NES Classic Edition game system includes a static library of thirty built-in

25  Nintendo Console Games from the licensed NES library, including those from the

26  Donkey Kong, Super Mario Bros., The Legend of Zelda, and Metroid franchises.

27  32.    NOA sold approximately 2.3 million NES Classic Edition consoles

28  from November 2016 through April 2017 and over 5.9 million NES Classic

7

Edition consoles to date.

33.  Illegal copying of video game software is a large-scale international problem with great financial consequence for Nintendo.  Nintendo has taken many steps to halt the illegal copying, marketing, sale, and distribution of Nintendo Console Games and Nintendo video game systems.

34.  NOA's efforts include registration of the intellectual property rights in and to its video game systems and software.  In addition, Nintendo protects and enforces its rights in its intellectual property through legal actions to stop individuals and companies from trafficking in devices that circumvent technological measures used by Nintendo to prevent unauthorized access to its many different games and devices.  Nintendo also uses these technological measures to prevent the public from hacking, manipulating, or improperly exploiting Nintendo's game systems and extensive library of games.

**Defendants Illegally Modify the Nintendo Switch and Pirate Switch Games**

35.  Nintendo employs several measures to protect and control access to its copyrighted works.  To avoid piracy, the Nintendo Switch employs both design based and technological measures, which Nintendo has built into the Nintendo Switch to ensure that it will only play authorized games.  Multiple copyrighted programs are repeatedly accessed during the operation of the Nintendo Switch security system and the game play that occurs if the security measures are passed. The technological measures of the Nintendo Switch ensure that it is not possible to play an unofficial version of a Nintendo Switch game downloaded from the Internet unless it contained software to pass (or circumvent) the security checks.

36.  Defendants presently market, sell, and traffic modification devices for the Nintendo Switch that enable those who use them to circumvent the technological measures employed by Nintendo to control access to its copyrighted works and to protect its rights as a copyright owner.  This modification is installed in a user's Nintendo Switch in the form of a circumvention tool along with

unauthorized custom firmware.  This exploit allows the playing of pirated Nintendo Console Games.

37.     Additionally, Defendants offer for sale the installation of a physical modification chip to the internal Nintendo Switch hardware board, which similarly circumvents Nintendo's piracy protections.  A listing on Defendants' OfferUp page describes how they accomplish the physical modification chip installation.

38.     One of Defendants' listings on the above-mentioned OfferUp page describes a "Nintendo Switch Mod Play Switch Games Team Xecuter" as a modification that "will allow you to play ANY switch games you want.  Just load and play!"  In connection with the purchase of "Nintendo Switch Mod Play Switch Games Team Xecuter", Defendants will "give [the buyer] a free game of [his or her] choice."

39.     Another of Defendants' listings on the same OfferUp page is a "New Sandisk 64GB micro SD Nintendo Switch games."  Defendants' advertisement states that "[t]hese SD cards will come with any 4-6 (depending on the game size) released Nintendo Switch games of your choice."  Defendants further tout that the $50 price of the SD card is "less than the price of a single Switch game."  The games on the SD card can be "loaded and played through Team Xecuter's Dongle or OS license."

40.     Defendants prominently display the Nintendo Switch logo in their OfferUp listings and advertisements for the Nintendo Switch modification services.  Representative samples of printouts from the OfferUp website are attached hereto as Exhibit E.

41.     On information and belief, Defendants warn customers purchasing modifications of online bans by NOA.  Defendants inform customers that Nintendo Console Games can be downloaded from the Internet, but that downloading from the Internet is not recommended because NOA can track the downloaded game and ban the user automatically when going online to play the game.

9

42.     On information and belief, Defendants are in possession of an entire Nintendo Switch video game library containing most, if not all, of the Nintendo Switch games released in the U.S. and around 45 Nintendo Switch games that have been released in Japan and not in North America.  Defendants have used special software to extract each game and then put the collection on a hard drive, for subsequent unauthorized use and distribution.

43.     For example, on or about November 28, 2018, Defendants sold an unlawful circumvention modification for the Nintendo Switch Console together with an SD card that contained unauthorized copies of the Nintendo Console Games Splatoon 2, Super Mario Odyssey, and Super Smash Bros. Ultimate. Defendants' sale of a pirated copy of Super Smash Bros. Ultimate is particularly notable because that game will not even be released for sale in the United States until December 7, 2018.  Thus, Defendants acquired a copy of Super Smash Bros. Ultimate from an unauthorized and unlawful source.

44.     According to the Defendants, when a customer purchases a pirated game from Defendants, "[y]ou are basically paying for a license for the software" (*i.e.*, Defendants are purporting to "license" pirated copies of the copyrighted Nintendo Console Games to their customers).

45.     When the circumvention devices are used as Defendants instruct, they bypass Nintendo's technological security measures and gain access to the Nintendo Switch, and to certain of NOA's copyrighted programs, as an authorized game for Nintendo Switch would have.

46.     NOA has never authorized any individual to avoid the technological measures used to protect NOA's copyrighted works, and Defendant in this case was not authorized by NOA or on its behalf.

47.     On information and belief, Defendants have modified over 100 Nintendo Switch game systems.  Through this unauthorized activity, hundreds of Nintendo Console Games are being used without NOA's consent.

48.     On information and belief, Defendants have derived substantial profit and financial benefit from their involvement in the marketing of and trafficking of modifications.

### Defendants Illegally Modify the NES Classic Edition and
### Pirate NES Classic Games

49.     Defendants also presently market and sell Nintendo's NES Classic Edition video game systems via the OfferUp profile.  Defendants advertise that these NES Classic Edition game systems include "800+ games" pre-loaded on the game system even though the authorized NES Classic Edition game systems include exactly thirty Nintendo Console Games on the game system.  Thus, Defendants have illegally modified the NES Classic Edition game systems in their possession and added over 770 games (Nintendo Console Games as well as third party titles).  Defendants claim that the NES Classic Edition video game systems offered for sale were purchased from Target and GameStop and are now being re-sold as "New (never used)" for a $15 USD profit.

50.     NOA has never authorized any individual to circumvent the technological measures used to protect NOA's copyrighted works, and Defendants in this case were not authorized by NOA or on its behalf.

51.     On information and belief, Defendants have derived profit and financial benefit from the marketing of and selling of the modified NES Classic Edition game systems.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF: VIOLATION OF THE DIGITAL
### MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 1201, *et seq.*)

52.     The allegations of paragraphs 1-51 of this Complaint are incorporated by reference as though fully set forth herein.

53.     NOA holds valid copyrights, duly and properly registered with the

United States Copyright Office, including those identified at Exhibit A.  True and correct copies of a representative sample of those copyright registrations are attached as Exhibit B

54.     NOA has implemented technological measures that effectively control access to the Nintendo Console Games and protect its rights to these copyrights.

55.     Defendants have been and are actively engaged in the business of marketing, importing, offering to the public, providing, or otherwise trafficking in modifications for the Nintendo Switch video game console in the form of modification chips and circumvention devices.  Defendants' modifications (a) are designed or produced for the primary purpose of circumventing technological measures that control access to works protected by NOA's copyrights, or that protect NOA's rights as a copyright owner; (b) have no commercially significant purpose or use other than to circumvent a technological measure that controls access to copyrighted works and that protects the exclusive rights of copyright owners; or (c) are marketed by Defendants with knowledge of its use to circumvent Nintendo's technological access controls and copyright protection, in violation of 17 U.S.C. §§ 120l(a)(l), 120l(a)(2), and 120l(b).

56.     Defendants' actions were willful and were taken for their own commercial advantage or personal financial gain.  Defendants knew or had reason to know that offering to the public, providing, and trafficking in such modifications was unlawful.  Such knowledge is evidenced by, *inter alia*, Defendants warning their customers that they may face online bans from NOA if the use of these improper modification chips and circumvention tools is detected by NOA.

57.     As a result of the foregoing, Defendants are offering to the public, providing, or otherwise trafficking in the United States technology that violates 17 U.S.C. § 1201(a)(2).

58.     Defendants' acts have been and continue to be performed without the permission, authorization, or consent of NOA.

59. Defendants' wrongful conduct injured and will continue to injure NOA, and NOA has no adequate remedy at law to redress any continued violations. Unless restrained by the Court, Defendants will continue to violate the Digital Millennium Copyright Act.

60. NOA is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct pursuant to 17 U.S.C. § 1203(b)(l) and to an Order impounding any materials involved in Defendants' violation of the Digital Millennium Copyright Act pursuant to 17 U.S.C. § 1203(b)(3).

61. NOA is entitled to recover its actual damages and Defendants' profits resulting from Defendants' wrongful conduct, pursuant to 17 U.S.C. § 1203(c)(2). Alternatively, NOA is entitled to statutory damages pursuant to 17 U.S.C. § 1203(c)(3).

62. NOA is also entitled to recover its attorneys' fees and costs of suit pursuant to 17 U.S.C. § 1203(b).

## SECOND CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT (NINTENDO GAMES) (17 U.S.C. § 106, *et seq*.)

63. The allegations of paragraphs 1-62 of this Complaint are incorporated by reference as though fully set forth herein.

64. NOA owns numerous valid copyright registrations related to the Nintendo Console Games, including, without limitation, those identified at Exhibit A and attached at Exhibit B, which are in full force and effect, and are enforceable by NOA.

65. Defendants have infringed NOA's copyrights in its Nintendo Console Games by reproducing the Nintendo Console Games without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501. Such infringing conduct includes, but is not limited to, copying Nintendo Console Games through the unauthorized downloading of the Nintendo Console Games onto memory cards to sell to the public, copying Nintendo Console Games through the unauthorized

13

downloading of the Nintendo Console Games onto NES Classic Edition game systems to sell to the public, and creating derivative works of the Nintendo Console Games via the installation and use of Defendants' modification on the Nintendo Switch and the installation and use of hundreds of infringing Nintendo Console Games on the NES Classic Edition game systems.

66.     Each infringement by Defendants constitutes a separate and distinct act of infringement.

67.     Defendants' acts of infringement are willful, in disregard of and with indifference to the rights of NOA.

68.     As a direct and proximate result of the infringements by Defendants, NOA is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, NOA is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as deemed proper under 17 U.S.C. § 504(c).

69.     NOA is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

70.     As a result of Defendants' acts and conduct, NOA has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  NOA is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe NOA's rights in its Nintendo Console Games.  Thus, NOA is entitled to temporary, preliminary, and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

### THIRD CLAIM FOR RELIEF: INDUCEMENT TO INFRINGE COPYRIGHT (NINTENDO GAMES) (17 U.S.C. § 106, *et seq.*)

71.     The allegations of paragraphs 1-70 of this Complaint are incorporated by reference as though fully set forth herein.

72.     Defendants have actively encouraged and induced others located in

the United States to engage in acts of copyright infringement.  This includes encouraging and inducing potential purchasers to fraudulently obtain access to Nintendo Console Games and then, having done so, to engage in unauthorized reproduction of the Nintendo Console Games.  Defendants also have encouraged users of the modifications to create derivative works just by using the modifications.

73.     Defendants' acts of infringement were willful, in disregard of, and with indifference to the rights of NOA.

74.     As a direct and proximate result, NOA is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, NOA is entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be found proper under 17 U.S.C. § 504(c).

75.     NOA is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

76.     As a result of Defendants' acts and conduct, NOA has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  NOA is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to induce infringement of NOA's copyrights in the United States.  NOA is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

**FOURTH CLAIM FOR RELIEF: CONTRIBUTORY COPYRIGHT INFRINGEMENT (NINTENDO GAMES) (17 U.S.C. § 106, *et seq.*)**

77.     The allegations of paragraphs 1-76 of this Complaint are incorporated by reference as though fully set forth herein.

78.     When the users use Defendants' modification, they directly infringe NOA's copyrights in its Nintendo Console Games, including by creating

unauthorized derivative works of the games in violation of the Copyright Act, 17 U.S.C. §§ 106, 501.

79.    Defendants have actual and constructive knowledge of the direct copyright infringements encouraged by the provision of the modifications.

80.    Defendants have materially contributed to the foregoing copyright infringements by creating the modification, promoting the modification, making the modification available to the public, instructing others on how to install or operate the modification, and personally installing the modification on a consumer's Nintendo Switch and the infringing Nintendo Console Games on the NES Classic Edition devices.  Defendants even include photos and detailed descriptions of the modification chip installation and service.  In particular, Defendants provide users of the modification with the tools to infringe and instructions on how to use the modification in a manner least likely to be caught or arouse suspicion.  In addition, Defendants have enabled and encouraged potential purchasers to fraudulently obtain access to the Nintendo Console Games and then, having done so, to engage in unauthorized reproduction of the Nintendo Console Games.  Defendants have also materially contributed to the foregoing copyright infringements by enabling users of Defendants' modification chips and circumvention devices to use the modification to create derivative works.

81.    As a direct and proximate result, Defendants' users have infringed NOA's rights in its Nintendo Console Games.

82.    Each such infringement by users of the modification constitutes a separate and distinct act of infringement.

83.    Defendants' acts of infringement were willful, in disregard of, and with indifference to, the rights of NOA.

84.    As a direct and proximate result of the contributory infringements by Defendants, NOA is entitled to damages and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.  Alternatively, NOA is

entitled to maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be determined proper under 17 U.S.C. § 504(c).

85.     NOA further is entitled to attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

86.     As a result of Defendants' acts and conduct, NOA has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.  NOA is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to infringe NOA's copyrights.  NOA has no adequate remedy at law.  NOA is entitled to injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## FIFTH CLAIM FOR RELIEF: TRADEMARK COUNTERFEITING AND INFRINGEMENT (Lanham Act, 15 U.S.C. §§ 1114 and 1116)

87.     The allegations of paragraphs 1-86 of this Complaint are incorporated by reference as though fully set forth herein.

88.     NOA owns numerous federal trademark registrations with the U.S. Patent and Trademark Office, including, without limitation, those identified in Exhibit C.  True and correct copies of these trademark registrations, attached at Exhibit D, are in full force and effect, enforceable, and incontestable under the Lanham Act, 15 U.S.C. § 1065.

89.     Without NOA's consent, Defendants have used and continue to use reproductions, counterfeits, copies and/or colorable imitations of the Nintendo Trademarks in connection with the sale, offering for sale, distribution, or advertisement of modified Nintendo NES Classic Edition game systems in a manner likely to cause confusion or mistake, or deceive as to the origin, sponsorship, approval, affiliation or connection of Defendants' modified video game systems, which constitutes trademark counterfeiting in violation of 15 U.S.C. §§ 1114 and 1116.

90.     The trademarks displayed in connection with the modified NES Classic Edition game system sold by Defendants are identical to the Nintendo Trademarks registered with the U.S. Patent and Trademark Office, including, but not limited to, "YOSHI" (Reg. No. 1777293), "WARIO" (Reg. No. 3385026), and "DUCK HUNT" (Reg. No. 3890446).  These trademarks are used in connection with Nintendo Console Games that would not otherwise be available on the NES Classic Edition game system.

91.     Defendants prominently displayed Nintendo Trademarks on the OfferUp listings and advertisements, including the Nintendo Switch logo which is prominently displayed on Defendants' OfferUp web page and in their advertisements for sale of Nintendo Switch modification services.

92.     Defendant's activities at all times relevant to this action have been willful and/or knowing.

93.     Defendants' activities have directly and proximately caused and, unless enjoined, will continue to cause irreparable injury to NOA and the goodwill NOA has established in its name and products over the years, and NOA has no adequate remedy at law.  NOA is, accordingly, entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

94.     NOA has suffered and will continue to suffer substantial damages to its business, reputation, and goodwill, and will continue to suffer the loss of sales and profits that NOA would have made but for Defendants' acts, and NOA is entitled to recover three times Defendants' profits or damages, whichever amount is greater, and the costs of this action pursuant to 15 U.S.C. § 1117(b), or, alternatively, statutory damages pursuant to 15 U.S.C. § 1117(c).

95.     NOA is also entitled to attorneys' fees and other costs the Court considers just and equitable.

**SIXTH CLAIM FOR RELIEF: FALSE DESIGNATION OF ORIGIN,**

**FALSE DESCRIPTIONS (15 U.S.C. § 1125(a))**

96.     The allegations of paragraphs 1-95 of this Complaint are incorporated by reference as though fully set forth herein.

97.     NOA is the exclusive owner of the Nintendo Trademarks.  These marks are in full force and effect, enforceable, and incontestable under the Lanham Act, 15 U.S.C. § 1065.

98.     Defendants have used, and continue to use, the Nintendo Trademarks in commerce without NOA's authorization or consent.  Defendants' use constitutes false designation of origin, false or misleading representation of fact because Defendants have copied, and continue to copy, a number of NOA's federally registered trademarks (including those relating to (i) Nintendo Game titles, (ii) Nintendo characters and (iii) Nintendo consoles) in connection with their modifications and modification services.  Thus, consumers are likely to be confused, mistaken, or deceived as to the association of Nintendo with Defendants' products offered for sale, in violation of 15 U.S.C. § 1125(a).

99.     Defendants had constructive notice of the Nintendo Trademarks through the U.S. federal trademark registrations that existed prior to Defendants' use of the Nintendo Trademarks.

100.   On information and belief, Defendants had actual notice of the Nintendo Trademarks through his viewing and copying of images from Nintendo products.

101.   Defendants' activities have harmed and continue to harm NOA. Accordingly, NOA is entitled to recover damages, Defendants' profits received as a result of the infringing activities and conduct, and the costs of bringing this action pursuant to 15 U.S.C. § 1117.  Because Defendants' activities and conduct have been and continue to be willful, deliberate, and knowingly and intentionally designed to trade upon the goodwill of the Nintendo Trademarks to cause

confusion, mistake, and to deceive the public, NOA is also entitled to treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

102.   Unless restrained by this Court, Defendant's actions will continue to cause harm to NOA.  If Defendants are allowed to continue using the Nintendo Trademarks in connection with the modified game systems offered for sale on Defendant's OfferUp profile, NOA will suffer irreparable injury to its reputation. NOA has no adequate remedy at law.  Because this irreparable injury cannot be adequately calculated or compensated by money damages, NOA seeks injunctive relief.

### SEVENTH CLAIM FOR RELIEF: DILUTION (15 U.S.C. § 1125(c))

103.   The allegations of paragraphs 1-102 of this Complaint are incorporated by reference as though fully set forth herein.

104.   NOA is the exclusive owner of the Nintendo Trademarks.

105.   The Nintendo Trademarks are distinctive and famous within the meaning of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).  The Nintendo Trademarks are widely recognized by the general consuming public of the United States and beyond as the designation of source of the goods and services of NOA.  In fact, Nintendo is a household name.

106.   Defendants commenced use of the diluting marks after the Nintendo Trademarks became famous.

107.   Defendants' distribution and/or sale, without authorization from NOA, of the modified NES Classic Edition game system, which contains copies of NOA's federally registered game titles and characters, which are not available on the authorized NES Classic Edition game system, is diluting the distinctive quality of the Nintendo Trademarks, and decreasing the capacity of the Nintendo Trademarks to identify and distinguish NOA's products.

108.   Defendants' activities as alleged herein, both separately and collectively, have diluted or are likely to dilute the distinctive quality of the

Nintendo Trademarks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

109.   At all times, Defendants willfully intended to trade on NOA's reputation and/or to cause dilution of NOA's famous trademarks.

110.   NOA is thus entitled to injunctive relief and damages, extraordinary damages, fees and costs pursuant to 15 U.S.C. § 1125(c)(2).

## EIGHTH CLAIM FOR RELIEF: COMMON LAW TRADEMARK INFRINGEMENT UNDER CALIFORNIA LAW

111.   The allegations of paragraphs 1-110 of this Complaint are incorporated by reference as though fully set forth herein.

112.   NOA is the exclusive owner of the Nintendo Trademarks, which are valid, enforceable, and eligible for protection.

113.   Without NOA's authorization, Defendants used, and continue to use, in commerce, reproductions, counterfeits, copies, and/or colorable imitations of the Nintendo Trademarks on and in relation to their modification services, which unlawfully use and copy various characters and game titles that are federally registered with the U.S. Patent and Trademark Office.

114.   Defendants' unauthorized uses of the Nintendo Trademarks are likely to cause, are intended to cause, and are likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to the source or origin of the products and services offered by Defendants, and/or NOA's authorization, sponsorship, or approval of the sales of those products and services to consumers, and/or a possible affiliation, connection or association between NOA and Defendants.

115.   Defendants' activities and conduct therefore constitute common law trademark infringement under California state law.

116.   Upon information and belief, by their actions, Defendants have used and continue to use the Nintendo Trademarks in commerce with the knowledge

and intent that such uses cause confusion, mistake, and deception to the purchasing public.  Defendants intend to continue their infringing and unfairly competitive acts, unless restrained by this Court.

117.   Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not entitled in law or equity.

118.   Defendants' acts have irreparably damaged and, unless enjoined, will continue to irreparably damage NOA, and NOA has no adequate remedy at law.

119.   Pursuant to the common law of the State of California, NOA is entitled to injunctive relief, an award of damages and/or Defendants' profits resulting from Defendants' willful conduct.

120.   NOA is further informed and believes that Defendants' conduct was oppressive, fraudulent and malicious, and are thereby entitled to an award of punitive damages.

**NINTH CLAIM FOR RELIEF: STATUTORY INFRINGEMENT UNDER CALIFORNIA LAW (Cal. Bus. & Prof. Code § 14200, *et seq.*)**

121.   The allegations of paragraphs 1-120 of this Complaint are incorporated by reference as though fully set forth herein.

122.   NOA is the exclusive owner of the Nintendo Trademarks, which are valid, enforceable, and eligible for protection.

123.   Without NOA's authorization, Defendants used, and continue to use, in commerce, reproductions, counterfeits, copies, and/or colorable imitations of the Nintendo Trademarks on and in relation to their modification services, which unlawfully use and copy various characters and game titles that are federally registered with the U.S. Patent and Trademark Office.

124.   Defendants' unauthorized uses of the Nintendo Trademarks are likely to cause, are intended to cause, and are likely to continue to cause confusion, mistake and deception among the general consuming public and the trade as to the

source or origin of the products and services offered by Defendants, and/or NOA's authorization, sponsorship, or approval of the sales of those products and services to consumers, and/or a possible affiliation, connection or association between NOA and Defendants.

125.   Upon information and belief, by their actions, Defendants have used and continue to use the Nintendo Trademarks in commerce with the knowledge and intent that such uses cause confusion, mistake, and deception to the purchasing public.  Defendants intend to continue their infringing and unfairly competitive acts, unless restrained by this Court.

126.   Upon information and belief, by their willful acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

127.   Pursuant to California Business and Professions Code § 14245, NOA is entitled to injunctive relief, and an award of damages of up to three times Defendants' profits from, and up to three times all damages suffered by reason of, the wrongful manufacture, use, display, or sale of Defendants' counterfeit and infringing products.

128.   Pursuant to California Business and Professions Code § 14245, the Court shall order the destruction of any goods, labels, or packaging or any components bearing or consisting of any counterfeit versions of the Nintendo Trademarks, and all instrumentalities used in the production of the counterfeit goods, including, but not limited to, any items, objects, tools, machines or equipment.

**TENTH CLAIM FOR RELIEF:  DILUTION UNDER CALIFORNIA LAW**
**(Cal. Bus. & Prof. Code § 14247)**

129.   The allegations of paragraphs 1-128 of this Complaint are incorporated by reference as though fully set forth herein.

130.   NOA is the exclusive owner of the Nintendo Trademarks.

COMPLAINT FOR DMCA VIOLATIONS, COPYRIGHT INFRINGEMENT,
AND TRADEMARK INFRINGEMENT

131. The Nintendo Trademarks are famous as defined within California Business and Professions Code § 14247 and are widely recognized by the general consuming public of California as designations of the source of NOA's products.

132. Defendants' distribution and/or sale, without authorization from NOA, of the modified NES Classic Edition game system, which contains copies of NOA's federally registered game titles and characters, which are not available on the authorized NES Classic Edition game system, is diluting the distinctive quality of the Nintendo Trademarks, and decreasing the capacity of the Nintendo Trademarks to identify and distinguish NOA's products.

133. Defendants have intentionally and willfully diluted the distinctive quality of the famous Nintendo Trademarks and, unless restrained by this Court, will continue to willfully dilute the Nintendo Trademarks.

134. Defendants' acts have irreparably harmed and, unless enjoined, will continue to harm NOA, and NOA has no adequate remedy at law.

135. Pursuant to California Business and Professions Code §§ 14247 and 14250, NOA is entitled to injunctive relief and damages in the amount of three times Defendants' profits and three times all damages suffered by NOA by reason of Defendants' manufacture, use, display or sale of infringing goods.

## PRAYER FOR RELIEF

WHEREFORE, NOA prays for the following relief:

1. Preliminary and permanent injunction enjoining Defendants, their agents, servants, employees, representatives, distributors, affiliates, and all those in active concert or participation with Defendants, from:

    a. manufacturing, offering to the public, providing, using, or otherwise trafficking in any technology, product, service, device, component or part thereof (including this modification) that is primarily designed or produced to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any

COMPLAINT FOR DMCA VIOLATIONS, COPYRIGHT INFRINGEMENT, AND TRADEMARK INFRINGEMENT

work that NOA holds a registered copyright;

b. manufacturing, offering to the public, providing, using, or otherwise trafficking in any technology, product, service, device, component or part thereof (including this modification) that has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work that NOA holds a registered copyright;

c. manufacturing, offering to the public, providing, using, or otherwise trafficking in any technology, product, service, device, component or part thereof (including this modification) that is marketed by Defendants or others acting in concert for use in circumventing a technological measure that effectively protects NOA's rights as a copyright owner, or controls access to any work to which NOA holds a registered copyright;

d. infringing NOA's copyrighted works;

e. selling, distributing, lending, or playing any unauthorized copy of any NOA copyrighted work;

f. inducing, contributing to, or facilitating third-party infringements of NOA's copyrighted works, or any derivative thereof;

g. marketing, selling, supplying, or otherwise providing any product, device, or component thereof that contributes to or induces the copying of NOA's copyrighted software;

h. infringing NOA's federally registered trademark registrations with the U.S. Patent and Trademark Office;

i. selling, distributing, lending, or playing any unauthorized counterfeit copy of any NOA product;

j. importing, exporting, shipping, delivering, distributing, transferring,

returning, holding for sale, destroying, or otherwise moving, storing, or disposing of any modification chips, circumvention devices, counterfeit Nintendo products or any other item or product bearing or used to reproduce any unauthorized reproduction, counterfeit, copy, or colorable imitations of NOA's copyrights; and

k.  destroying, transferring, altering, moving, returning, concealing, or in any manner secreting any and all modification chips, circumvention devices, counterfeit Nintendo products, memory cards with infringing copies of Nintendo software and any of all documents and records, including, without limitation, computer tapes, computer disks, business records, emails, social media accounts, social media posts, supplier names and addresses, shipment records, books of accounts, receipts, specifications, packaging and containers, and other documentation relating or referring in any way to the manufacturing, offering to the public, providing, using, or otherwise trafficking in modification chips and circumvention devices.

2.  Requiring Defendants to provide NOA with an accounting of any and all sales of products or services that infringe or violate any of NOA's rights described herein, including ad revenue from social media sites associated with any sales of infringing Nintendo products, as well as donations and cryptocurrency associated with infringing Nintendo products and circumvention devices, and an award to NOA of Defendants' profits, gains, or unjust enrichment in an amount to be proven at trial.

3.  An order pursuant to 17 U.S.C. §§ 1203 and 503 and 15 U.S.C. § 1116 providing for the seizure, impoundment, and destruction of all modification chips, circumvention devices, and counterfeit Nintendo products within Defendant's custody, possession, or control.  And additionally directing Defendant to identify every one of Defendants' suppliers and sources of circumvention

devices, modification chips, and counterfeit Nintendo products, including, but not limited to, manufacturers, websites, invoices, and contact details.

4.     That the Court issue an order requiring Defendants to file with this Court and serve on NOA within thirty (30) days after service of an injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction.

5.     Actual or statutory damages for copyright infringement and willful infringement under 17 U.S.C. § 504, as appropriate.  Damages in the form of disgorgement of profits, actual damages, and/or costs pursuant to 28 U.S.C. § 1117(a).

6.     An award of three times NOA's actual damages or profits of Defendants resulting from said infringement.

7.     An award of exemplary and punitive damages against Defendants.

8.     An award of reasonable attorneys' fees and costs of the suit incurred herein.

9.     That NOA be awarded prejudgment and post-judgment interest on the above damages awards; and

10.     Any and all such other relief that the Court may deem to be just and proper.


DATED: December 11, 2018            HAYNES AND BOONE, LLP


                                    By: */s/ Kenneth G. Parker*
                                    _____
                                    Kenneth G. Parker
                                    Attorneys for Plaintiff,
                                    Nintendo of America Inc.

**COMPLAINT FOR DMCA VIOLATIONS, COPYRIGHT INFRINGEMENT, AND TRADEMARK INFRINGEMENT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Nintendo of America Inc. respectfully demands a trial by jury on all issues triable by jury.


DATED: December 11, 2018          HAYNES AND BOONE, LLP


By: */s/ Kenneth G. Parker*
    Kenneth G. Parker
    Attorneys for Plaintiff,
    Nintendo of America Inc.

COMPLAINT FOR DMCA VIOLATIONS, COPYRIGHT INFRINGEMENT, AND TRADEMARK INFRINGEMENT